**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**DELILA B.**

                                          **Plaintiff,**

                      v.                                                        1:19-CV-797
                                                                                 (FJS)

**COMMISSIONER OF SOCIAL SECURITY,**

                                          **Defendant.**

_____

**APPEARANCES**                                         **OF COUNSEL**

**KIRK & TEFF, LLP**                         **RALPH M. KIRK, ESQ.**
10 Westbrook Lane
P.O. Box 4466
Kingston, New York 12402
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **CHRISTOPHER L. POTTER, ESQ.**
J.F.K. Federal Building, Room 625            **HEETANO SHAMSOONDAR, ESQ.**
15 New Sudbury Street
Boston, Massachusetts 02203
        -and-
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

       Plaintiff Delila B. brought this action pursuant to the Social Security Act, 42 U.S.C.

§ 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1,

10. Pending before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 10, 16.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff applied for benefits on March 27, 2015, alleging disability as of August 7, 2012.  *See* Dkt. No. 7, Administrative Record ("AR") at 18.[1]  Plaintiff filed a timely request for a hearing on October 23, 2015.  *See* AR, Ex. B4B, at 116.  A video hearing was held on August 17, 2017, before Administrative Law Judge Robert Gonzalez (the "ALJ").  *See* AR at 41-78.  Plaintiff's attorney, Mr. James Chisholm from the Law Offices of Kirk & Teff, LLP, represented her at the hearing, and a vocational expert, Ms. Sugi Komarov, testified.  *See id.* at 43.  During the hearing and on the advice of counsel, Plaintiff amended her alleged onset date to November 1, 2013.  *See id.* at 18, 47.

On June 19, 2018, the ALJ issued a written decision in which he made the following findings "[a]fter careful consideration of the entire record…"

1) Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2015."

2) Plaintiff "did not engage in substantial gainful activity during the period from her amended alleged onset date of November 1, 2013 through her date last insured of December 31, 2015."

3) Plaintiff "had the following severe impairments: lumbar spine degenerative disc disease, cervical spine degenerative disc disease, thoracic spine degenerative disc disease, panic disorder with agoraphobia, depressive disorder, obesity, hypothyroidism, and dyslipidemia."

4) Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1."

---

[1] All references to page numbers of documents in the record are to the page numbers that the Court's ECF system generates, which appear in the top right corner of those pages.

5) Plaintiff "had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can frequently reach overhead with the bilateral upper extremities. She can occasionally push and pull. She can occasionally climb and descend stairs. She cannot stoop, crouch, or kneel. She must use a cane to ambulate. She can understand and remember and carryout simple work and adapt to routine workplace changes. She can occasionally interact with supervisors, coworkers and the general public. She cannot operate motor vehicles."

6) Plaintiff "was unable to perform any past relevant work."

7) Plaintiff "was born on June 4, 1966 and was 49 years old, which is defined as a younger individual age 45-49, on the date last insured."

8) Plaintiff "has at least a high school education and is able to communicate in English."

9) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."

10) "Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed."

11) Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from November 1, 2013, the amended alleged onset date, through December 31, 2015, the date last insured."

*See* AR at 20-32 (citations omitted).

The ALJ's decision became the Commissioner's final decision on May 8, 2019, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 6. Plaintiff then commenced this action on July 3, 2019, filing a supporting brief on January 6, 2020. *See* Dkt. Nos. 1, 10. Defendant filed a response brief on March 25, 2020. *See* Dkt. No. 16.

In support of her motion, Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment with respect to her mental health impairments was not supported by the substantial evidence in the record. *See generally* Dkt. No. 10 at 9-16. Plaintiff further argues

that the ALJ erred in assigning greater weight to Dr. Marks' opinion as compared to Drs. Gindes' and Helprin's opinions and Plaintiff's subjective complaints. *See id.*

### III. DISCUSSION

**A. Standard of review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review." *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

1) The ALJ first determines whether the claimant is currently engaged in SGA. *See* C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).

2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*

3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).

4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).

5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B. ALJ's treatment of Dr. Marks' opinion**

In August 2015, a state agency psychological examiner, Dr. M. Marks, Psy.D., opined that Plaintiff had mild limitations in her activities of daily living and moderate limitations in concentration, persistence, or pace, and social interactions. *See* AR at 30 (citing AR, Ex. B2A). Dr. Marks further concluded that, despite Plaintiff's limitations, she was able to understand and remember instructions, sustain a routine, interact, and adapt. *See id.* (citing AR, Ex. B2A). The ALJ afforded Dr. Marks's opinion "[s]ome weight."

Plaintiff argues that it was legal error to assign such great weight to Dr. Marks, a non-examining medical expert, because his opinion was rendered before the vast majority of mental

health records were entered into the record. *See* Dkt. No. 10 at 14. Plaintiff claims that Dr. Marks had access to only three medical exhibits that contained mental health records – Plaintiff's Emergency Department records from April 2, 2015 at Kingston Hospital, Progress Notes from April 23, 2015 to June 8, 2015 from Spectrum Behavioral Health, and Dr. Helprin's psychiatry evaluation from August 18, 2015 – and that she had just started treating for her mental impairments four months before Dr. Marks issued his opinion. *See id.* (citing AR at 84-85). Plaintiff argues that Dr. Marks' "boilerplate" findings were not sufficiently compelling to overcome Dr. Gindes' and Dr. Helprin's contrary opinions.[2] *See id.* at 15.

"'[S]tate agency medical and psychological consultants … are also experts in Social Security disability evaluation,' and an ALJ must consider their findings and opinions as opinion evidence." *Pickett v. Colvin*, No. 3:13-CV-776 (LEK), 2015 WL 5749911, *9 (N.D.N.Y. Sept. 30, 2015) (quoting 20 C.F.R. § 404.1527(e)(2)(i)); (citing SSR 96-6p ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Act.")). Furthermore, "a non-examining source's opinion may override the opinions of treating sources, 'provided they are supported by evidence in the record.'" *Id.* (quoting *Santos-Sanchez v. Astrue*, 723 F. Supp. 2d 630, 638 (S.D.N.Y. 2010) (citing *Schisler*, 3 F.3d at 568)). In addition, "an ALJ is not required to receive an updated report from the state medical experts whenever new evidence is available, unless the additional evidence may change the state medical experts' opinions." *Id.* (citing *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) (citing 20 C.F.R. § 404.1527(e)(2)(i) and SSR 96-6p)).

---

[2] As discussed, *infra*, neither Dr. Gindes nor Dr. Helprin were Plaintiff's treating physician; instead, they performed single consultative examinations.

- 6 -

The ALJ was required to consider Dr. Marks' findings and opinions as opinion evidence because he was a state agency psychological examiner. Plaintiff admitted that "there was no treating psychiatric opinion directly addressing [her] mental functional limitations." *See* Dkt. No. 10 at 13. Instead, the available "mental health opinion evidence consist[ed] of three functional capacity assessments." *Id.* Thus, there is no issue as to whether the ALJ inappropriately "overrode" a treating physician's opinion with Dr. Marks' opinion.

Plaintiff further claimed that Dr. Marks did not consider the functional capacity assessments performed after his opinion; however, the ALJ was not required to request that Dr. Marks update his opinion. Notably, the ALJ clearly considered those post-August 2015 functional capacity assessments when he noted that Dr. Marks' opinion was "generally consistent both internally and with the substantial evidence of record, showing benign mental status examination findings." *See* AR at 30 (citing AR, Ex. B5F). The ALJ specifically referenced Progress Notes from Spectrum Behavioral Health, dated August 24, 2015 to September 28, 2016, for support. *See* AR, Ex. B5F at 382-387. Additionally, as Defendant points out, the ALJ considered all of the mental health evidence from those Progress Notes and *added* restrictions beyond those Dr. Marks found necessary. *See* Dkt. No. 16 at 8. For example, the ALJ limited Plaintiff to "simple work" and occasional interactions with supervisors, coworkers, and the general public, all of which go beyond the limitations Dr. Marks suggested. *See* AR at 23-24. Thus, Plaintiff is incorrect in asserting that the ALJ "failed to consider whether that opinion may have differed" in light of later evidence. *See* Dkt. No. 10 at 15 (citing *Stevens v. Comm'r of Soc. Sec.*, No. 3:15-CV-524 (ATB), 2016 WL 319515 * 17 (N.D.N.Y Jun. 8, 2016)).

Accordingly, for each of the above-stated reasons, the Court finds that it was reasonable for the ALJ to assign "[s]ome weight" to Dr. Marks' opinion.

### C. ALJ's treatment of Drs. Gindes' and Helprin's opinions

Plaintiff asserts that the ALJ should not have discounted Drs. Gindes's and Helprin's opinions from their consultative exams. *See* Dkt. No. 10 at 15-16. With respect to Dr. Alex Gindes, Ph.D., the ALJ assigned "little weight" to his opinion that Plaintiff had "moderate or marked mental limitations[.]" *See* AR at 29. The ALJ noted that Dr. Gindes' opinion was "rendered in October 2013, prior to [Plaintiff]'s amended alleged onset date and [was] considered in an earlier unfavorable determination dated October 30, 2013." *See id.* at 29-30. Plaintiff argues that, although the exam predated her amended onset date of November 1, 2013, and was considered in a prior application denial, res judicata does not impose an absolute bar on reconsidering evidence submitted in a prior application. *See* Dkt. No. 10 at 15. Plaintiff further contends that Dr. Gindes' opinion is "highly probative" of whether she became disabled as of the onset date. *See id.* at 16.

"'Medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability.'" *Moore v. Comm'r of Soc. Sec.*, No. 1:16-CV-270 (DJS), 2017 WL 1323460, *9 (N.D.N.Y. Apr. 10, 2017) (quoting *Velez v. Colvin*, [No. 3:13-CV-171], 2016 WL 884635, at *5 (D. Conn. Mar. 8, 2016) (quoting *Carway v. Colvin*, 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014))) (other citation omitted). Additionally, "[a]lthough it is within an ALJ's purview to consider pre-onset date evidence, it is not required." *James N. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1324 (CFH), 2020 WL 1140498, *5 (N.D.N.Y. Mar. 6, 2020) (citations omitted). Here, Dr. Gindes' psychological consultative exam occurred on October 22, 2013, and was considered in a prior application denial for Social Security benefits. As such, the ALJ was not required to consider it.

Furthermore, the Second Circuit has "frequently 'cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian* [*v. Astrue*], 708 F.3d [409,] 419 [(2d Cir. 2013)]). "This concern is even more pronounced in the context of mental illness where … a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Id.* Both Drs. Gindes and Helprin were consultative physicians evaluating Plaintiff's mental health after a single examination.

Regarding Dr. Leslie Helprin, Ph.D., Plaintiff erroneously contends that the ALJ inappropriately substituted his own judgment for that of Dr. Helprin's. *See* Dkt. No. 10 at 16. The ALJ did not substitute his judgment; but, instead, he afforded "little weight" to Dr. Helprin's opinion that Plaintiff had marked memory limitations and marked limitations in her ability to maintain a regular schedule due to anxiety and depression. *See* AR at 28. The ALJ assigned Dr. Helprin's opinion "little weight" because "the medical record poorly support[ed] [those] limitations." *Id.* For example, the ALJ noted that, in Plaintiff's Progress Notes from Spectrum Behavioral Health, she routinely had "intact logical thought associations, no psychotic thoughts, good judgment and insight, oriented times three, normal recent and remote memory, adequate attention span, could adequately name objects and repeat phrases, and she had an adequate fund of knowledge." *See id.* As explained in *Estrella*, it was appropriate for the ALJ to consider Plaintiff's seven months of Progress Notes from Spectrum Behavioral Health to provide a more accurate view of her mental health compared to Dr. Helprin's single examination.

Additionally, the ALJ afforded "some weight" to Dr. Helprin's opinion that Plaintiff could perform "simple work with reduced social demands," finding that it was supported by

Plaintiff's symptoms of depression and anxiety. *See* AR at 28. The ALJ's reliance on that finding corresponded with his assessment of Plaintiff's RFC, which indicated that she could do "simple work." *See id.* at 23.

Furthermore, neither Dr. Gindes nor Dr. Helprin were treating sources; and, thus, their opinions were not entitled to a presumption of weight. *See* 20 C.F.R. § 404.1527(c)(2) (providing such a presumption only in the context of treating source opinions). Therefore, for all of these reasons, it was appropriate for the ALJ to discount Drs. Gindes' and Helprin's opinions.

**D. ALJ's evaluation of Plaintiff's subjective complaints**

Finally, Plaintiff contends that the ALJ discredited the severity of her symptoms and relied heavily on "a selective and factually incorrect reading of [her] activities of daily living." *See* Dkt. No. 10 at 10. Plaintiff has mental health impairments including agoraphobia, panic disorder, and depression, which, she asserts, meet the requirements of Listings 12.04 and 12.06. *See* Dkt. No. 10 at 9 (citing 20 C.F.R. Part 404, subpt. P, App. [1], 12.00). Plaintiff argues that the record does not support the ALJ's finding that she only had "mild to moderate" limitations due to her mental health impairments in the following three categories: (1) interacting with others; (2) concentration persistence and pace; and (3) adapting or managing oneself. *See* Dkt. No. 10 at 9 (citing AR at 17-18).

"'As a fact-finder, the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence.'" *Gonzalez v. Berryhill*, No. 3:18-cv-01820 (RAR), 2020 WL 614201, *5 (D. Conn. Feb. 10, 2020) (quoting *Dir., Pietrunti v. Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997)). "Credibility findings of an ALJ are entitled to great deference and therefore can be

reversed only if they are 'patently unreasonable.'" *Hornyak v. Saul*, No. 3:18-cv-1950 (SRU), 2020 WL 1910129, *12 (D. Conn. Apr. 20, 2020) (quotation omitted).

> In assessing the credibility of the subjective evidence of pain and disability provided by the plaintiff's testimony, the ALJ considers the objective medical evidence and a number of other factors. SSR 96-7p. These factors include:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses to relieve pain or other symptoms …; and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.*

*Osborne v. Astrue*, No. 6:07-CV-0314 (LEK), 2010 WL 2735712, *7-*8 (N.D.N.Y. July 9, 2010).

In this case, the ALJ noted five specific reasons why Plaintiff's "allegations of the nature, intensity, persistence, [and] limiting effects of [her] symptoms [were] not consistent with the medical signs, laboratory findings and/or other evidence of record which limit the capacity for work-related activities." *See* AR at 28. First, the ALJ indicated that Plaintiff's self-described activities of daily living were not limited to the extent one would expect given her complaints of disabling symptoms and limitations. *See id.* For example, Plaintiff reported that she could drive, manage money, watch television, cook three to four times per week, clean twice per week with her husband, do laundry and shop once per week, shower by herself three times per week,

and dress herself seven days per week. *See id.* (citing AR, Exs. B3F, B4F). Next, the ALJ noted that Plaintiff's treatment for her allegedly disabling impairments consisted of physical therapy, medication management, and psychotherapy, none of which the ALJ believed would prevent her from engaging at her RFC. *See id.* at 28-29. The ALJ also noted that Plaintiff's symptoms and related limitations were not consistent with evidence in the record. *See id.* at 29. As an example, the ALJ pointed to record evidence that showed a lack of reduced joint motion, muscle spasm, sensory deficit, or other motor disruption that would support Plaintiff's statements about pain and functional limitations. *See id.* (citing AR, Exs. 13F/8, 13, 17, 21, 26, 30, 34, 38, 47, 51, 55, 61, 65).

Specifically, Plaintiff complains that the ALJ erred by not mentioning various statements that she made to her providers, such as that she does not go shopping alone due to her anxiety, that her husband helps her with shaving her legs, walking, laundry, dressing, and cooking, that she is very forgetful, and she does not handle changes in routine well. *See* Dkt. No. 10 at 11-12. However, courts "'do not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" *Lowry v. Astrue*, 474 F. App'x 801, 805 (2d Cir. 2012) (summary order) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

As discussed above, the ALJ cited to numerous pieces of evidence from Plaintiff's medical record to support his finding that Plaintiff only had mild to moderate limitations due to her mental health impairments.[3] Accordingly, substantial evidence in the record supported the

---

[3] Notably, as the Court discussed above, the ALJ reasonably gave some weight to Dr. Marks' opinion. *See* AR at 30. Furthermore, Plaintiff does not challenge that the ALJ gave some weight to Drs. Globina's and Wiener's opinions, even though they both found Plaintiff less

- 12 -

ALJ's credibility determination and findings; and, further, it was not "patently unreasonable" for the ALJ to discount some of Plaintiff's specific complaints about her symptoms to her medical providers.

### IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 10, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 16, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: April 30, 2020
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge

---

limited physically than the ALJ did. *See id.* at 25-26. Plaintiff also does not challenge the ALJ's reference to Dr. Oppenheim's finding that only "conservative" treatment was warranted. *See id.* at 25.